United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. I'm Judge Nelson and it's a pleasure to be joined by my colleagues Judge Hawkins and Judge Forrest. We are glad to be together as judges and we look forward to the opportunity when counsel will be able to join us as well. We hope that that is in the near future but we want to welcome counsel who will be arguing virtually via video technology and we're so grateful to our court staff who are now experts on getting all of us together virtually but they've really made, they're just invaluable to helping us continue with our work. We ask that during arguments you please watch your time, keep to the allocated time frames and try to sum up your argument as time is concluding. Let us know if you'd like to reserve time for argument on rebuttal. We're ready to proceed with our oral argument calendar. Two cases have been submitted, Gormley v. Kijikazi case number 21-35193 and Ellis v. Garland case number 18-71615. We have three cases scheduled for argument this morning. The first case set for argument is United States v. Masuisui case number 19-10349 and that case is set for 10 minutes per side. And Ms. Kajiwada, if I got that right? Yes, Your Honor. Ms. Kajiwada, thank you. Okay, you may proceed. Thank you, Your Honor. Your Honor, my name is Cynthia Kajiwada and I represent the appellant Karisi Masi Masuisui. I'd like to reserve two minutes for rebuttal. You know, at the beginning I'd like to point out this case is a little unusual because of how long it went on for. And part of the reason for that is Mr. Masuisui suffers from multiple medical issues and mental health issues. During the course of this entire proceeding, he was on a number of medications which affected both his ability to deal with his court proceedings and also with his attorneys. Is that going to your argument on his attempt to withdraw his guilty plea or to the whole case? Yes, and it actually goes to kind of all of his arguments because as the panel can see, this case went on for over five years. So what medication specifically are you saying warrants the withdrawal of his guilty plea? As I go through it, most of it was fairly standard medication other than maybe an antidepressant that he was on. Is that your position? That is one of the big problems that Mr. Masuisui had. And I believe his attorney at the time referred to it as an antipsychotic medication, trazodone. And the reason that affected him so much at the guilty plea is his attorney had tried to withdraw twice before the guilty plea within the last month. And one of the main reasons his attorney tried to withdraw is he said the medication was affecting his clients so much, both he and his family could not even communicate with Mr. Masuisui. But yet by the time the guilty plea came around, the defense attorney didn't even tell the court about all these severe problems with the medications that Mr. Masuisui had experienced just shortly leading up to the change of plea hearing. But Mr. Masuisui, he didn't raise it with the court either. In fact, to the contrary, he assured the court that he was fine, that nothing was affecting his ability, his memory, his ability to think through what he was doing. What's your position for why the district court didn't ask enough questions to verify that he was able to enter a voluntary plea? Yes. Well, Judge, you're right that Mr. Masuisui did answer some yes questions to the judge, but he also expressed some hesitation and some problems with his medications. At one point, the district court asked Mr. Masuisui, is anything affecting your memory? And he said, I don't think so, except and then his defense attorney interrupted and said, oh, he's on a medication, he's on trazodone. But Mr. Masuisui never got to explain that he did believe that that medication was affecting him. Later, the court asked him, are you able to proceed? And he said, I think I'm ready. But yet, and then the judge asked further questions and he did say yes. But that's often the case that change of plea hearing where the judge asks simple yes or no questions. But at the very beginning, Mr. Masuisui had expressed some hesitation, which didn't really get followed up on. In addition, as the hearing went on, he expressed some confusion with what was happening in the hearing. For example, at one point, the court said, do you understand the charges you're here for? You're here for these two charges. And he said, oh, I thought I was here for four charges, even though from the beginning of the case, he's only been charged with two counts. And he continued to express some confusion throughout the entire change of plea hearing, especially when it came to the factual basis. He was fine when the court was asking him simple yes or no questions. But then when it came to the factual basis, he was very confused about who involved in this conspiracy, what the dates were of the conspiracy. He was rambling all over the place and his attorney had to interrupt multiple times to try to get him back on track. In fact, at one point, the court said, we're going to start all over again because I've heard several different things from you. And so throughout this change of plea hearing, he was clearly showing that he was in trouble. And the thing that I am not entirely sure about is whether the district judge had the entire history of what had happened leading up to the month before the change of plea hearing, because the two hearings on the motion to withdraw were held before a magistrate judge. But it's pretty clear that the defense attorney was having such severe problems that he couldn't even communicate with his clients. And yet that was not brought up at the change of plea hearing a month later. Hey, can I turn your attention to the, you're challenging the denial of the seven-month continuous continuation to further review the PSR? Yes. Yeah. And you claim a violation of Rule 32. Number one, I'd be interested in what you think the violation of Rule 32 actually is. And then secondly, that's subject to harmless error. And so what would be the harm here, even if there was a Rule 32 violation? Yes. So, Your Honor, the Rule 32 violation is at the sentencing hearing that happened on October 2, 2019. Mr. Misui-Sui's current defense counsel told the court she had not reviewed the pre-sentence report with Mr. Misui-Sui. And that's why she requested a continuance. So, can I ask you about that? Because the assumption seems to be that because the attorney who was there in court hadn't specifically reviewed it, she did say she reviewed it generally with him, but she didn't, she said to, you know, that it hadn't gone line by line. Is that a Rule 32 violation if an attorney doesn't go through line by line the entire PSR? Or is it enough for counsel to talk to him generally, especially where he's had six prior counsel and he's reviewed it apparently multiple times with other counsel? Why is that a Rule 32 violation here? Well, Your Honor, to answer your second question first, there's no evidence that he did review it with any other counsel. His one attorney, Mr. Isaacson, filed three legal objections, but when he filed a sentencing statement, there were no other objections to the facts. And that sentencing statement is the only document that objected to the pre-sentence report at all. That was filed back on May 26, 2017, more than two years before the sentencing hearing. And secondly, the defense attorney does need to review the pre-sentence report line by line because that's the only way that the defendant is going to be able to object to factual inaccuracies. And as Rule 32 Advisory Committee note has noted, it's very important that the defendant be able to object not only to legal inaccuracies, but factual inaccuracies. And that's because that document, the pre-sentence report, is not only used for sentencing, but it also follows the defendant throughout the Bureau of Prisons. And it's used for multiple things such as classification, placement, programming, and so that's why it needs to be accurate. And going back to Judge Nelson, your comment about, you know, he must have reviewed it with other attorneys. No other attorney ever filed anything to do with sentencing. Mr. Isaacson was the only one who filed anything to do with the sentencing. The attorneys that Mr. Masui Sui had after that never filed anything with sentencing. So there is no, nothing on the record just showed that they did review that pre-sentence report with them. I'm not sure, is that true? Because the District has a stack of letters and other information that the defense had submitted. The only reason to submit all that information would have been for sentencing purposes. So I guess I don't understand your argument there. Okay, I'll try to clarify, Judge Forrest. I think, so the stack of objections and sentencing documents that the judge was referring to, those were mainly having to do with a motion for variance and then all the letters submitted by Mr. Masui Sui's family and friends. I can go through the documents that were submitted, but the only document that had anything to do with the pre-sentence report was the one sentencing statement that was filed back on May 26, 2017. So, I mean, is your argument that we're not allowed to kind of look at the circumstances and make reasonable inferences? Because the circumstances are that the parties had the PSR for a long period of time. The defendant was always represented by counsel, multiple. I mean, he had a series of counsel that would have had the opportunity to know what the PSR said and talk about it with him. Objections were filed on his behalf. Lots of supporting materials in terms of family letters and all of that stuff were submitted. And all of that suggests that this wasn't a, you know, a sentencing hearing that happened where the defense didn't have any opportunity to present a position or to represent the defendant's interests. So, can't we look at that circumstance and say that there's a reasonable inference that the defendant had enough time with the PSR to make the arguments he needed to make and wanted to make? Well, Your Honor, that would be true if there was any evidence that an attorney had reviewed the pre-sentence report with Mr. Masui Sui. And I'll give one example that goes to the harmless error question. At the time that the probation office interviewed Mr. Masui Sui, he did not have a high school diploma or a GED. Between the time he was interviewed and the sentencing hearing, he obtained that GED, yet his pre-sentence report still says he does not have a high school diploma or a GED. And in fact, at sentencing, the district court relied on that as an aggravating factor, saying you don't have a high school diploma or a GED. That was something that affected his sentencing decision. In addition, I know it also affects Mr. Masui Sui's classification within the Bureau of Prisons. And so that's something that if an attorney had gone over the pre-sentence report with him, he would have said, no, I do have a GED. And that was never corrected. In addition, there were numerous factual inaccuracies based on his interview with the probation office that he would have corrected having to do with his mental health and his substance abuse. But because no attorney ever went over that line by line with him, he never got a chance to object to those factual inaccuracies. And the last attorney in court specifically said she hadn't gone over it with him, and she could only argue from the objections that his former attorney had made over two years ago. And so, Judge Forrest, you're correct that you can look at the circumstances, but in this case, I think the record shows that there was no evidence that Mr. Masui Sui ever went over the pre-sentence report line by line with any attorney. And it is important for him to be able to do that, to correct not only what he sees as legal issues, but the facts. Counsel, you're over time. We'll give you a minute for rebuttal unless there's further questions from the panel at this point. But maybe we'll let you resume for rebuttal. Thank you. Thank you. Mr. Mulek, if I've gotten it right. I apologize. May it please the court. Good morning. Tom Mulek for the United States. Your Honor, the United States' position is that the district court's decision denying the motion to withdraw the guilty plea was not a plain error, and it was not an abuse of discretion. If we look at the providency inquiry, the colloquy the court had with the Masui Sui, we also note, of course, that this was two years. This motion to withdraw guilty plea was filed two years after the change of plea, after the guilty plea. It was only six days before his newly discovered evidence or intervening circumstances. The court, we submit to the court that the district court asked three appropriate questions determining if Masui Sui, Mr. Masui Sui was on medication, what type of medication that was. Masui Sui couldn't recognize, didn't know the names of the medications. He said that he knew generally what he was taking it for, gout and high blood pressure and arthritis. And the court asked him how that affected him, if he was able to proceed. He said he felt he was ready to proceed. We believe, we submit that Mr. Isaacson, the defense attorney, did not interrupt the defendant and explain that or try to stop him and say it was Trazodone that he was taking. Mr. Masui Sui couldn't remember the names of the medications that he was taking and he was presented that this was a Trazodone that he was taking and it was an antidepressant. And the court specifically asked if he was, to his knowledge, if anything affected his memory and he said not right now. And if he was, if there was anything that made him feel drowsy or affected him, to pay attention or feeling that he was not able to proceed. And he said he was anxious. Anxiety was the norm. The court indicated, observed that that was probably the case and asked him if he would be sleepy or drowsy, anything that caused him to be sleepy or drowsy. And he said, I would say yes, but I'm prepared to the best of my ability to proceed this day. And the court followed up. Counsel, Counsel, Counsel, we've read the colloquy. All right. And our and have had a time to digest it. He went through six or seven lawyers. Do I have that right? Yes, Your Honor. Did any of those lawyers tell the court that they were having trouble communicating with the defendant? The record is, as Mr. Masui-Sui argues or says, the record, they don't say that the district court knew that. And they say the record is unclear as to the district court knowing that because the motions to withdraw, where Ms. Kagiwara says this was the hearing that the change of plea occurred was where Mr. Isaacson told them the defendant, in his opinion, was competent to proceed to trial, which is the same test as competence to make a guilty plea. So there's no evidence that Judge Watson, the district court judge, knew of any problems that was being experienced by any of the counsel. That's the best way I can answer that. There are, of course, the record that's preserved. So are there specific instances in which counsel sought to withdraw and said the reason for the sought withdrawal was because of to communicate with the defendant? If those reasons existed, the United States is not aware of them. That portion, Volume 3, was filed next part of the day under seal. My question is really pretty direct and easy to answer. Probably could be answered with a yes or no. Did any of the seven lawyers or the six lawyers that moved to withdraw tell the court, I'm having trouble communicating with my client? Is the answer yes or no? I think the last attorney, Ms. Gutierrez, said that he would not engage with her. So the answer is yes as to that attorney on the record that I'm aware of, Your Honor. The others I'm not aware of because that part of the record has been sealed ex parte. Was that before or after the Bureau of Prisons found him competent to stand trial? That was the last attorney. That was long after the Bureau of Prisons competency hearing, Your Honor. The competency hearing was decided in 2016, and it was 2019 when Gutierrez, Catherine Gutierrez, the last attorney, told Judge Watson at the sentencing. Thank you. Can you address our position on the... Maybe you're going there. On the Rule 32 issue, in your opinion, was there a technical violation of Rule 32 in this instance? And then we would review it for harmless error, or is the government's position that there was no violation of Rule 32? The government's position, Your Honor, is there was no violation. I would correct a statement in the reply brief of Mr. Masui Sui where they said no attorney went over the pre-sentence report with Mr. Masui Sui. Mr. Masui Sui never said affirmatively that he was unable to read the report or was unable to discuss the report with an attorney. And the reply brief said that no defense attorney had gone over the pre-sentence report. And, of course, Ms. Gutierrez told the court, I have discussed it with him in general. I believe he understands or knows the contents of it. But she did not do it page by page. Say there had not been prior discussion with one of the other counsel. Would that be enough for an attorney to go in and say, I've discussed it generally with him? Because some of this depends on how much of a line item do you need to go through it. And I just don't know what the rule is on Rule 32. Is it a... I mean, the rule says verify that the defendant and the defendant's report. How much do we read into, you know, discussed? I mean, the fact that he just says, hey, if a defense counsel says, have you read it? Do you have any concerns that I need to be aware of? And the defendant says, no, it's fine. Is that enough for Rule 32? Or would more be required? Probably not. Probably not. But in this case, we have much more than that. We have a response, detailed response by Mr. Isaacson. We have a two-year delay where several other attorneys came in before it got to the sentencing hearing. But those are prior counsel. And so, and maybe that's your argument, is we can look at all seven counsel collectively together and add up all the different discussions and make the inferences from that. Is that the government's position in this particular case? Yes, based upon that. And of course, Gutierrez is the last attorney saying that I have discussed it with him in general, and I believe he understands it. Putting that all together collectively, that would be a no-no. Well, but what I heard you say is that perhaps Mr. Gutierrez's account on its own wouldn't have been enough. For a defense counsel to just say, I've discussed it with him generally, I'm convinced that he's aware. If that was all we had, it sounds like that might not be enough. So we do need to go back and look at the collective discussions. Is that correct? Well, if that's all we had, it might not be enough, Your Honor. That's correct. I would have to submit on that. Did you want to address the harmlessness? Council said that he had a GED and that that didn't get brought up. I mean, why is that not prejudicial to the defendant, not to have that information before the judge? Well, I don't know that that by itself is material, Your Honor. We certainly had a stack of information presented to the sentencing judge about his family and his work and his worthwhile within his family community. I think that fact alone, our position is it would be harmless error. He did have not only a stack of letters of reference, he had a variance motion, which was based upon two expert witnesses, a Dr. Williams, who talked about his or gave her a report, several reports to the court in piecemeal fashion as to his kidney and health problems, and then a BOP, former BOP medical director that would talk about the defense witness, Mr. Masui Sui's expert witness, talking about the limitations of the Bureau of Prison's medical facilities. We countered that with our own two experts, Dr. Klein, a nephrologist out of Los Angeles, a professor, and then Mr. Pelton, who was a medical director of the Bureau of Prisons in the western region. Counsel, you're out of time unless there's further questions, if you want to wrap up. Sure. Basically, I'll say that our position is that there was no clear error in this, that there was harmless error if the judge did err in not giving the continuance, which is a discretionary call. This was a case where it had gone on for a long time. It seemed that the defendant was just delaying the matters. Even the day before the sentencing, he notified the court through counsel that he was going to not appear for his sentencing. He talked about that, and the court did a minute entry telling the defense attorney to tell Mr. Masui Sui that he can waive his right to appear, but we are going to go with this sentencing hearing tomorrow. Then when he got in there, the first thing he wanted to do, or maybe the second thing he wanted to do, ask for continuance, was to move to recuse the court. So there was quite a bit of delay in this matter, and we believe the court handled it properly. Thank you. Thank you, counsel. Ms. Kajiwara, we'll give you one minute for rebuttal. Thank you, Your Honor. On the sentencing issue, I just wanted to reiterate that the pre-sentence report and objections to the pre-sentence report are very different from the other documents that were submitted on behalf of Mr. Masui Sui. It had been over two years since any objections were filed to the pre-sentence report. In addition, there were never any objections to any of the facts. I've never had a client who hasn't gone through a pre-sentence report and said, oh, that fact is wrong or that's changed. Given the time that had passed, he should have been allowed to change things. And I would disagree with Mr. Mulick that the GED was very important, not only for sentencing, where it's relied on as an aggravating factor, but it also follows him throughout the Bureau of Prisons. And so we would ask the court to vacate the judgment and remand for further proceedings. Thank you. Thank you. Thank you to both counsel for your arguments in this case. The case is now submitted. We'll move on.
judges: HAWKINS, NELSON, FORREST